UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JERRIS M. BLANKS,                     )
                                      )
        Movant,                       )
                                      )
        v.                            )        Case No. 4:22-cv-01257-SRC
                                      )
UNITED STATES OF AMERICA,             )
                                      )
        Respondent.                   )

**Memorandum and Order**

Jerris Blanks asks the Court to vacate his sentence under 28 U.S.C. § 2255.  He asserts numerous claims, with numerous subparts, that address the gamut of his criminal proceedings. But the record in this case forecloses his arguments and demonstrates that Blanks is not entitled to section 2255 relief.

**I.    Background**

**A.    Factual background**

In January 2019, a federal jury found Blanks guilty of receiving and possessing child pornography.  Superseding Indictment, *United States v. Blanks*, No. 4:16-cr-00271-SRC, doc. 71 ("Crim. doc."); crim. doc. 220.  Following that conviction, the probation office prepared a presentence investigation report.  Crim. doc. 245.  It described the facts that lead to his conviction as follows:

6. According to Federal Bureau of Investigation (FBI) and the Regional Computer Crimes Education and Enforcement Group (RCCEEG) records, on March 4, 2011, during an internet undercover operation a computer was identified that possessed and was offering to participate in the distribution of child pornography.  Specifically, a detective was able to connect to the computers internet protocol (IP) address and download two files including the following: an image file of a minor female nude laying on her side with her knees towards her chest making the focal point of the image her vagina and an image file of a

minor female with her bikini bottoms pulled down making the focal point of the image her vagina. Charter Communications identified the IP address as registered to Alice Padgitt (not indicted), 532 South Adams Street, Festus, Missouri. Alice Padgitt is the grandmother of Jerris M. Blanks.

7. On August 18, 2011, a search was executed at 532 South Adams Street, Festus, Missouri, the residence of Blanks. The defendant was interviewed and admitted to searching and downloading child pornography on the desktop computer located in the residence. During the search, law enforcement seized numerous CDs/DVDs, a Fuji Film XD 16MB picture card, a RCA thumb drive, a Cal-Comp A100 cellular telephone, and a Dell desktop computer. An analysis of the computer revealed a Maxtor Diamond Max hard drive, manufactured in Singapore, which contained 569 images and 14 video files of child pornography. The images and videos depicted children, some under the age of 12, partially or completely nude engaged in sexual activity with adults or other children. Some of the images depicted bondage. Analysis also revealed at the time of seizure the computer was downloading images of child pornography from "Frostwire" which is a peer 2 peer (P2P) file sharing program. An analysis of the CDs/DVDs revealed a CD containing 61 images of child pornography which included images of prepubescent children engaged in sexual activity. One of the images depicted bondage. Blanks was transported to the Festus, Missouri, Police Department for questioning and released the same day. Upon interviewing the defendant, Blanks admitted to searching for and masturbating to child pornography. Blanks indicated he preferred girls and transsexuals ages 13 to 16. During the interview, the defendant admitted to using the P2P networks "Frostwire" and "Limewire." Blanks provided an explanation of what a P2P network means and indicated he obtained material by downloading it from another user.

8. On June 18, 2015, the St. Louis County, Missouri, Police Department received a cyber tip from the National Center for Missing and Exploited Children (NCMEC) that the Google email address of "stlfixhop@gmail.com" had uploaded child pornography. Specifically, image files depicting the following: a prepubescent nude female performing oral sex on a prepubescent nude female; an adult male inserting his penis into the vagina of a prepubescent nude female; a nude adult male sitting in a chair with a nude prepubescent female sitting in his lap and holding the male's erect penis in her hand, a nude adult male with an erect penis, a female's head, both of which are touching the buttocks of a nude prepubescent female lying face down on a bed, an adult female standing next to a dressed prepubescent female whose left hand is touching the vagina of the adult female, two nude prepubescent females sitting on a leather couch with their legs spread and their hands spreading apart their vaginas, and two prepubescent nude females performing oral sex on one another while a third female partially dressed holds a dog chain over one of the prepubescent females. A record check of the email address and mobile telephone number associated with the tip revealed that it was registered to the defendant.

9. On June 26, 2015, detectives responded to the defendant's residence, 532 South Adams Street; however, he was not present. Blanks contacted the detectives and at their request met with them at a south St. Louis County, Missouri, police station. Blanks indicated he did not want to answer whether he had uploaded improper material with his email address; however, provided detectives with his cellular telephone. The defendant requested his attorney; however, spontaneously stated, "I could not afford to get a counselor and I was doing better for a long time." An analysis of the defendant's cellular telephone, a Samsung, GT-i1952 Mega, revealed 476 image files depicting minors in little to no clothing. In some of these images the minors were displaying their genitals. These images were located using an extraction program which recovers information from call logs, contacts, email drafts, installed applications, instant messages, notes, passwords, user accounts, and other data files on the device.

10. In summary, between March 2011, and June 2015, the defendant knowingly received and possessed child pornography from the internet, a means or facility of interstate commerce. Blanks stored these images and videos to multiple devices that had been produced outside the State of Missouri, and therefore, traveled in interstate and/or foreign commerce. The defendant possessed more than 600 images of child pornography where each video is considered to be the equivalent of 75 images. Some of the images and videos possessed by the defendant depicted prepubescent minors and minors engaged in sadistic or masochistic conduct.

11. According to the government, Blanks is solely culpable for the instant offense.

12. On July 7, 2016, Blanks self-surrendered to the Federal Bureau of Investigations (FBI), and was released on bond supervision. On January 16, 2019, Blanks was taken into custody by the United States Marshals Service following a guilty verdict.

Crim. doc. 279-2 at ¶¶ 6–12 (emphases omitted).

## B.     Procedural background

### 1.     Criminal proceedings

United States District Court Judge E. Richard Webber sentenced Blanks to 130 months on each of the counts to be served concurrently. Crim. doc. 248 at 2 (The Court cites to page numbers as assigned by CM/ECF.). Judge Webber later resentenced Blanks to account for the fact that the 2011 possession-of-child-pornography statute set a statutory maximum term of

imprisonment of 120 months on count two.  Crim. docs. 275, 285–86.  In the end, Judge Webber sentenced Blanks to 130 months on counts one and three and 120 months on count two, all to be served concurrently.  Crim. doc. 285 at 2.

Blanks appealed his conviction.  *See* crim. docs. 251, 288.  He claimed that the district court abused its discretion when it denied his motion to refile his pretrial motions and that the district court abused its discretion when it denied his motion in limine prohibiting the United States from showing child-pornography images to the jury.  *See* crim. doc. 325 at 5, 8.  The Eighth Circuit affirmed, holding that the district court did not abuse its discretion in denying Blanks leave to refile pretrial motions and in admitting certain evidence.  *Id.* at 5.

Throughout the criminal and appellate proceedings, several attorneys represented Blanks at various stages and he appeared, at times, pro se; as context for the discussion below, the Court sets them forth here:

| Dates | Stage of litigation | Attorney(s) or pro se | Relevant documents |
|---|---|---|---|
| 7/11/2016 to 10/26/2016 | Pretrial motions | Matthew A. Radefeld | Crim. docs. 8, 27 |
| 10/25/2016 to 3/15/2017 | Pretrial motions | Richard Sindel | Crim. docs. 24, 54 |
| 3/6/2017 to 7/17/2017 | Pretrial motions | Scott Rosenblum, Adam Fein, and Marc Johnson | Crim. docs. 48–50, 83 |
| 7/17/2017 to 10/18/2018 | Pretrial motions | Kevin Whiteley | Crim. docs. 78, 158 |
| 10/18/2018 to 11/18/2018 | Pretrial motions | Pro se | Crim. docs. 158, 170 |
| 11/19/2018 to 5/16/2019 | Pretrial, trial, post-trial | Jeffrey Goldfarb | Crim. docs. 170, 253; *see also* Clerk Order, *United States v. Blanks*, No. 19-2042 (8th Cir. June 14, 2019) (granting Goldfarb's motion to withdraw) |
| 1/13/2019 to 5/29/2019 | Pretrial, trial, and post-trial | Nathan Diekman | Crim. docs. 213, 259 |
| 6/7/2019 to 8/15/2019 | Appeal | John V. Siskopoulos | Appearance, *Blanks*, No. 19-2042 |

| | | | (8th Cir. June 7, 2019); Clerk Order, *Blanks*, No. 19-2042 (8th Cir. Aug. 15, 2019) |
|---|---|---|---|
| 8/15/2019 to 11/12/2019 | Appeal | Pro se | Clerk Order, *Blanks*, No. 19-2042 (8th Cir. Aug. 15, 2019); Clerk Order, *Blanks*, No. 19-2042 (8th Cir. Nov. 12, 2019) |
| 11/12/2019 to 12/6/2021 | Appeal | Jonathan Sternberg | Appearance, *Blanks*, No. 19-2042 (8th Cir. Nov. 12, 2019); Supreme Court Order, *United States v. Blanks*, No. 21-5489 (U.S. Dec. 6, 2021) |
| 10/15/2020 to 10/15/2021 | Compassionate release | Rachel Korenblat | Crim. docs. 297, 348. |
| 10/15/2021 to present | Compassionate release and various other motions | Pro se | Crim. doc. 348 |

### 2.    Civil proceedings

In November 2022, Blanks filed a motion to vacate his sentence pursuant to section 2255. Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255, No. 4:22-cv-01257-SRC, *Blanks v. United States* (E.D. Mo. Nov. 22, 2022), doc. 1 ("Civ. doc.").  This case was originally assigned to Judge Webber.  While the case was assigned to Judge Webber, Blanks filed numerous motions, "supplements" to his motions, and an appeal.  *See, e.g.*, civ. docs. 3–5, 30.  On appeal, the Eighth Circuit "reviewed the original file of" this case and "summarily affirmed" the judgment.  Civ. doc. 63 at 2.  In May 2024, about five months after the Eighth Circuit's mandate issued, this case was reassigned to the undersigned.  Civ. doc. 74.  Several

motions, including Blanks's section 2255 motion, are ripe for this Court's review. *See* civ. docs. 1, 16, 77–80, 82–83, 85, 88. The Court now takes up those motions.

## II.    Standard

### A.    Section 2255

Under section 2255, a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct the sentence" on the grounds that the court imposed "the sentence . . . in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If a petitioner claims that his sentence violates the Constitution or laws of the United States, the petitioner must establish that the violation constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (first quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989); and then citing Fed. R. Crim. P. 32(d) advisory committee notes to the 1983 amendments). Generally, to obtain section 2255 relief based on a claim, a petitioner must have raised the underlying error on direct appeal. *See Roundtree v. United States*, 885 F.3d 1095, 1097 (8th Cir. 2018). If a petitioner failed to do so, the Court considers the claim procedurally defaulted, rendering it ineffective in establishing a right to section 2255 relief. *See id.*

Three exceptions to this general rule exist. First, "if the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis." *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002). Second, if a petitioner raises a constitutional claim, the Court does not consider the claim procedurally defaulted if the petitioner shows cause for the default and actual prejudice. *See Anderson v. United States*, 25

F.3d 704, 706 (8th Cir. 1994); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992). This "cause and prejudice exception does not apply to nonconstitutional or nonjurisdictional claims that could have been but were not raised on direct appeal." *Anderson*, 25 F.3d at 706 (first citing *Brennan v. United States*, 867 F.2d 111, 120 (2d Cir. 1989); and then citing *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988)). Finally, the Court "will consider a claimed error that could have been raised at trial or on direct appeal if the alleged error was a fundamental miscarriage of justice." *Id.* (citing *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam)). This exception, however, "applies only when a petitioner shows by clear and convincing evidence that, but for an alleged constitutional error, no reasonable juror would have found the petitioner guilty," *id.* at 706–07 (citing *Wallace v. Lockhart*, 12 F.3d 823, 827 (8th Cir. 1994)), and extends only to claims of factual innocence, *id.* at 707 (first citing *Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993); and then citing *Ramey*, 8 F.3d at 1314).

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220–21 (8th Cir. 1990)).

### B.    Ineffective assistance of counsel

A petitioner may raise an ineffective-assistance-of-counsel claim for the first time in a section 2255 motion, even if he could have raised the same claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). This exception to the procedural-default rule exists to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* Additionally, a petitioner's attorney may serve as counsel for both trial and appellate proceedings, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal. *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

To establish ineffective assistance of counsel, a petitioner "faces a heavy burden." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). He must show both that his counsel's performance was deficient and that the deficient performance prejudiced the petitioner's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001). An attorney's performance is deficient only if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88; *see also Sera*, 267 F.3d at 874. Two substantial impediments exist to making such a showing. First, "a 'strong presumption'" exists "that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689). Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (quoting *Strickland*, 466 U.S. at 690).

## III.     Discussion

In his motion to vacate his sentence, Blanks asserts 23 grounds, most of which contain numerous subparts.  Some of these claims are either duplicative or significantly related.  Accordingly, the Court considers below most of the grounds individually but, when possible, the Court considers duplicative or significantly related grounds together.

### A.     Ground 1

In ground 1, Blanks claims that (1) his right to a speedy trial under the Speedy Trial Act was violated and (2) he received ineffective assistance of counsel from his trial counsel, Goldfarb, because Goldfarb did not file a motion to dismiss the indictment even though 70 non-excludable days had passed without trial in violation of the Speedy Trial Act.  Civ. doc. 1 at 3–6; civ. doc. 78 at 1–3.

To demonstrate ineffective assistance of counsel, Blanks must show both that counsel's conduct fell outside "the wide range of reasonable professional assistance" and that Blanks suffered actual prejudice.  *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).  Here, Blanks can prove neither requirement because no Speedy Trial Act violation occurred.

Under the Speedy Trial Act, the trial of a defendant who pleaded not guilty must commence within 70 days of a certain date depending on the circumstances:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.

18 U.S.C. § 3161(c)(1).  Section 3161, however, requires a court to exclude certain periods of delay "in computing the time within which the trial of any" offense must commence, including "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" and "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement of the court."  18 U.S.C. § 3161(h)(1)(D), (H).  Additionally, the judge may grant an excludable continuance "on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," as long as "the court sets forth, in the record of the case, either orally or in writing, its reasons" for making that finding.  18 U.S.C. § 3161(h)(7)(A).  Finally, the Speedy Trial count begins the day after the triggering event (e.g., the defendant's first appearance before a judge) and excludes the day that triggers a period of excusable delay (e.g., the day a motion is filed). *United States v. Long*, 900 F.2d 1270, 1274 (8th Cir. 1990).

Here, a total of 41 non-excludable days elapsed:

- 3 days between the date Blanks had his initial appearance before a magistrate judge (July 7, 2016) and the date a magistrate judge held his arraignment hearing (July 11, 2016), at which time the magistrate judge granted Blanks's motion for additional time to determine whether he would file pretrial motions and found that granting the ends of justice served by granting the motion outweighed the best interest of the public and Blanks in a speedy trial.  Crim. docs. 7, 11.

- 5 days between a deadline to file pretrial motions or a waiver of such (November 1, 2026) and the date Blanks moved to extend that deadline (November 7, 2016).  Crim. docs. 23, 28.

10

- 13 days between the date a magistrate judge granted Blanks's motion to continue a pretrial-motion status hearing (February 23, 2017) and the date Blanks filed a motion for leave to withdraw his pretrial-motions waiver (March 9, 2017).  Crim. docs. 47, 51.

- 20 days between the date Blanks withdrew his pretrial motions and waived pretrial motions in light of a plea agreement the parties reached (April 18, 2018) and the date the United States filed a motion in limine (May 9, 2018).  Crim. docs. 128, 131.

All other periods qualify as excludable because either (1) a motion was pending or (2) a judge made a finding that the ends of justice served by extending the time for a motion or hearing outweighed the interest of the public and Blanks.

The Court notes one of those excludable periods:  the final stretch of pretrial proceedings.  On May 9, 2018, the United States filed a motion in limine, crim. doc. 131, which remained pending without a hearing until January 3, 2019, and pending without resolution until trial began on January 14, 2019, *see* crim. doc. 199 (reserving ruling on the motion); crim. doc. 217.  In the seven-month interim, Judge Webber (1) granted Blanks's motion for a change-of-plea hearing, crim. docs. 132, 134; (2) granted Blanks's two motions to continue the change-of-plea hearing, crim. docs. 136–37, 139, 141; (3) denied Blanks's motion for a change of judge, crim. docs. 143–44; and (4) set the case for trial and continued the trial thrice upon Blanks's motion, crim. docs. 142, 145, 147, 175–76, 200.  Further, Judge Webber found on three occasions that that the ends of justice served by extending the time for motion or hearing outweighed the interest of the public and Blanks, which addressed the period of June 19, 2018, to January 7, 2019.  *See* crim. docs. 141, 147, 176.  In light of these circumstances, the Court finds that the period of May 9, 2019, to January 13, 2019, is excludable under the Speedy Trial Act.  18 U.S.C. §§ 3161(h)(1)(D), 3161(h)(1)(H), 3161(h)(7)(A).

11

Because fewer than 70 non-excludable days had passed, any motion to dismiss Blanks's indictment for a violation of the Speedy Trial Act would have lacked merit. Thus, the Court holds that Blanks's trial counsel did not provide ineffective assistance of counsel. *Thomas v. United States*, 951 F.2d 902, 904 (8th Cir. 1991) ("[B]ecause the claim lacks merit, [the defendant's] attorney was not effective for failing to raise it."). Further, the Court finds that Blanks procedurally defaulted the claim that his right to a trial was violated, because Blanks failed to raise that claim at trial or on direct appeal. *Roundtree*, 885 F.3d at 1097. Accordingly, the Court finds that ground 1 does not warrant section 2255 relief.

### B.    Ground 2

Blanks asserts in ground two a due-process claim based on alleged violations of *Napue v. People of the State of Illinois*, 360 U.S. 264 (1959), and its progeny. Civ. doc. 1 at 6–59. He makes numerous allegations in support of this ground, ranging from the United States knowingly misled the jury to the United States fabricated evidence to witnesses providing false testimony— just to name a couple. *Id.* Blanks did not raise these issues on appeal, crim. doc. 315; accordingly they are defaulted unless he shows cause for the default and actual prejudice, *Anderson*, 25 F.3d at 706.

To establish cause for his default, Blanks claims that Goldfarb provided him ineffective assistance of counsel when Goldfarb investigated, researched, and verified the authenticity of the evidence used against him. *See* civ. doc. 78 at 16–17. This, allegedly, resulted in the issues not being preserved or raised on appeal. *Id.* Based on its review of the record, the Court finds that nothing suggests that Goldfarb failed to effectively investigate, research, or verify the authenticity of the evidence. To the contrary, Goldfarb's representation of Blanks during pretrial hearings and during the trial demonstrate that he thoroughly prepared for the trial, challenged the

12

evidence during the trial through effective cross examination, and effectively represented Blanks. Thus, the Court cannot conclude that Goldfarb provided Blanks with ineffective assistance of counsel.  Blanks's attempt to show cause therefore fails.  Accordingly, the Court finds that ground 2 is procedurally defaulted.

### C.    Ground 3

In ground 3, Blanks raises a constitutional claim based on the Confrontation Clause, arguing that he should have been able to confront Google at the trial. Civ. doc. 1 at 60–72. Because Blanks did not raise this claim on appeal, crim. doc. 315, the claim is procedurally defaulted, and the Court cannot consider it unless Blanks shows cause for the default and actual prejudice, *Anderson*, 25 F.3d at 706.  To establish cause, Blanks argues that Goldfarb provided Blanks with ineffective assistance of counsel.  *See* civ. doc. 1 at 66–68; civ. doc. 78 at 21–22.

Upon review of the record, the Court finds that Goldfarb acted within the range of reasonable professional assistance by not calling a Google representative as a witness.  Google provided an affidavit attesting to Blanks's email account and the presence of child pornography in some of his emails.  Crim. doc. 236, Trial Tr. at 10:1–10, 19:13–14.  That affidavit and other Google business records were properly admitted under Federal Rule of Evidence 902(11).  Thus, Blanks has not shown cause for his default.  Moreover, Blanks has failed to demonstrate actual prejudice.  Blanks seems to claim that a Google representative would have testified that the Google email and the Samsung phone were not Blanks's, *see* civ. doc. 1 at 60–72, but that claim directly conflicts with Blanks's trial testimony, crim. doc. 236, Trial Tr. at 220:24–221:2, 232:11–19.  Accordingly, the Court finds that ground 3 is procedurally defaulted.

D.     **Grounds 4 and 17**

Blanks asserts two claims that relate to Goldfarb's decisions regarding whom to call as witnesses.  In ground 4, Blanks claims that Goldfarb provided him ineffective assistance of counsel because Goldfarb (1) refused to call Charles Cherry, Janet Cherry, Vicky Rogers, Linda Padgitt, T-Mobile, a forensics expert, Straight Talk, Ambrosia Cherry, David Havens, Google, a tech expert, and Ashlet Barnett as witnesses; (2) failed to interview Matt Riddle and Danny Jackson; (3) failed to provide notice of an alibi defense in accordance with Federal Rule of Criminal Procedure 12.1; and (4) did not allow Blanks to review evidence related to the Samsung phone, which was not a T-Mobile device.  Civ. doc. 1 at 72–75.  Blanks reasserts the first three of these arguments in ground 17.  *See id.* at 125–27.  Upon review of the record, the Court finds that none of Blanks's claims in grounds 4 and 17 warrant section 2255 relief, for four reasons.

First, Goldfarb's decision to not call the individuals Blanks identified was within the range of reasonable litigation strategies.  "Trial counsel enjoys a strong presumption that his decisions regarding which witnesses to call were reasonable."  *Rice*, 449 F.3d at 898 (citing *Fretwell v. Norris*, 133 F.3d 621, 627–28 (8th Cir. 1998)).  And "[o]rdinarily, a defendant's failure to present some evidence from the uncalled witness regarding the witness's potential testimony" is "fatal to an ineffective assistance of counsel claim."  *Armstrong v. Kemna*, 534 F.3d 857, 867 (8th Cir. 2008) (quoting *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007)).

Here, Blanks has provided no evidence, for all but one of the uncalled witnesses, showing what the uncalled witnesses' testimony would have been.  And Blanks's own statements about these uncalled witnesses show that Goldfarb made reasonable strategic decisions to not call them.  *See* civ. doc. 1 at 72–75.  Blanks did, however, provide an affidavit by Padgitt that states she reported Blanks's Straight Talk wireless phone as missing and that a Straight Talk

14

representative told her that he scrambled and erased information from the phone.  Civ. doc. 1-1 at 4.  Although this affidavit does provide some evidence of what Padgitt would have testified to, Blanks has failed to show that Goldfarb's decision to not call Padgitt as a witness was unreasonable:  as Blanks admits, Goldfarb did not think it was a smart idea to call Padgitt as a witness "because nobody would believe her."  Civ. doc. 1 at 74.  In other words, Goldfarb found Padgitt not credible and found it unwise to call her.  Thus, Goldfarb's strategic decision not to call Padgitt, and the other witnesses Blanks named, falls well within the range of reasonable litigation strategies.  *Rice*, 449 F.3d at 898.

Second, Blanks has presented no evidence that Goldfarb did not interview Riddle and Jackson, both of whom Blanks states would have explained that he was with them on the day some of the incriminating evidence was created.  *See* civ. doc. 1 at 72–76.  Further, even if Goldfarb did not interview Riddle and Jackson as Blanks claims, Blanks has not presented any evidence of what Riddle or Jackson would have told Goldfarb or shown that "[t]he decision to forego witness interviews resulted" from something other than "an experienced criminal attorney exercising his professional judgment."  *Plant v. Wyrick*, 636 F.2d 188, 189 (8th Cir. 1980) (per curiam).

Third, Goldfarb and his co-counsel's decision not to provide notice under Rule 12.1 of an alibi defense as it relates to Charles Cherry was within the range of objectively reasonable conduct.  As explained above, Goldfarb reasonably decided not to call Charles Cherry as a witness.  Accordingly, neither Goldfarb nor his co-counsel needed to provide Rule 12.1 notice as it pertains to Charles Cherry.

Fourth, Blanks has not supported his cursory claim that Goldfarb did not allow Blanks to review evidence related to the Samsung phone.  *See* civ. doc. 1 at 76.  Moreover, even if

Goldfarb did not allow Blanks to review that evidence, nothing in the records shows "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Thus, the Court finds that grounds 4 and 17 do not warrant section 2255 relief.

**E.    Ground 5**

In ground 5, Blanks claims that Goldfarb provided ineffective assistance of counsel by lying to the jury during Goldfarb's closing argument. Civ. doc. 1 at 76–79. Blanks points to Goldfarb's discussion during closing argument about Blanks's Gmail account, stlfixhop@gmail.com, arguing that Goldfarb lied about Blanks's testimony about how Blanks got the Gmail account deactivated. *Id.* at 77. Upon review of the record, the Court finds that Blanks correctly states that he testified that he emailed Google using the stlfixhop@gmail.com account to report that someone had hacked his account, crim. doc. 236, Trial Tr. at 221:5–15, 224:15–225:17, and that Goldfarb told the jury that Blanks testified that he (Blanks) used his second email account to contact Google, *id.* at 221:5–15, 224:15–225:17; crim. doc. 237, Trial Tr. at 24:23–25:6.

Although Goldfarb did incorrectly paraphrase Blanks's testimony, the jury heard all Blanks's testimony as Blanks gave it, and Judge Webber gave jury instructions that negated any prejudice that Goldfarb's misstatement could have caused. The jury instructions made clear that "[s]tatements, arguments, questions and comments by lawyers representing the parties in the case are not evidence" and that the jury "should judge the testimony of [Blanks] in the same manner as [they] judge the testimony of any other witness," meaning that they needed to independently assess the credibility of Blanks and his testimony. Crim. doc. 226 at 3–4. Blanks has not shown

16

that he suffered any prejudice as a result of Goldfarb's closing argument.  Thus, ground 5 does not warrant section 2255 relief.

### F.    Grounds 6, 10, 11, 14, and 15

Blanks raises several grounds that relate to a cooperation-immunity agreement that he allegedly made with the United States.  Civ. doc. 1 at 80, 82, 85 (arguing that Blanks had a "cooperation-immunity agreement" with the Assistant United States Attorney Robert Livergood based on his conversations with Detective Slaughter and Detective Kavanaugh, and that Blanks is entitled to equitable immunity); *id.* at 100–01, 109–10 (claiming that Radefeld provided Blanks ineffective assistance of counsel by (1) failing to attend Blanks's interview with the police on June 26, 2015; (2) advising Blanks to meet and talk to law enforcement without counsel being present; and (3) failing to get the cooperation-immunity agreement in writing); *id.* at 102–03 (alleging that Richard Sindel provided ineffective assistance of counsel by (1) failing to explain that signing a waiver of pretrial motions "would have excused" the United States "from honoring [its] verbal agreement," i.e., the cooperation-immunity agreement; and (2) failing to explain the effects of waiving his pretrial motions, causing Blanks to unknowingly sign the waiver).  Allegedly, the cooperation-immunity agreement guaranteed that the United States would grant Blanks transactional immunity from prosecution for any offense related to his receipt and possession of child pornography in 2011 in exchange for his cooperation with other investigations.  *Id*. at 83–84.

The record, however, belies Blanks's argument that he had an immunity agreement with the United States.  During trial, Blanks testified that Detective Slaughter never promised him anything in return for his cooperation:

> Q.  (By Mr. Livergood) The -- now, how well did you -- so -- back when you were
>      talking -- going back to 2011.  You go and talk to Detective Slaughter?

A. Yes.

Q. All right.  And you kept on saying on direct examination that he was the one who brought up the prostitution?

A. No.

Q. You brought it up; right?

A. Yes.

Q. You are trying to get out of the case and you brought that up; isn't that right?

A. I brought up that I had some information I could assist him.  He told me he couldn't make any deals or promises.  I still proceeded to help anyway.

Q. Okay.  And he always told you that; isn't that right?

A. Yes.

Q. And you've been told that multiple times; isn't that right?

A. Yes.

Crim. doc. 236, Trial Tr. at 225:18–226:11.  Further, Blanks signed a proffer agreement that

explicitly stated that the United States had made no promises to enter any agreement and that no

agreement currently existed:

Dear Mr. Sindel:

This letter is to confirm the Government's position as to the interview of your client, Jerris M. Banks, that is scheduled today, December 21, 2016.  It is the Government's understanding that Mr. Blanks wishes to provide information at this time.

It must be understood that your client is not entitled to any specific consideration just because he has given the Government an interview.  Thus, there is presently no agreement as to the charges pending and/or the charges to be brought against your client or any consideration your client will receive for any cooperation. Such consideration, if any at all, will be unilaterally determined by the Government only after the interview is made at a time that the Government deems appropriate.

. . . .

18

> At this time, the Government is not entering into any agreement or representing that it will enter into any agreement. Any agreement the Government may enter into will be determined after the interview and shall be left to the discretion of the Government.
>
> . . . .
>
> **ACCEPTED:**
>
> **I, Jerris M. Banks [sic], have read this letter, consisting of three (3) pages, conferred with my attorney regarding the letter and fully understand that there are no promises by the Government to enter into any agreement.**

Civ. doc. 16-1 at 2–3 (first emphasis omitted). Blanks has failed to produce any evidence demonstrating that anyone made him promises in return for his cooperation. Moreover, even if the detectives made Blanks promises, Blanks has not shown that the detectives had actual authority to bind the United States to an agreement. *See United States v. Glauning*, 211 F.3d 1085, 1087 n.5 (8th Cir. 2000). Accordingly, the Court holds that Blanks failed to meet his burden of demonstrating that he had a cooperation-immunity agreement with the United States, which undermines the central premise of grounds 6, 10, 11, 14, and 15. Accordingly, the Court finds that grounds 6, 10, 11, 14, and 15 do not warrant section 2255 relief.

### G.    Ground 7

In ground 7, Blanks claims that the United States violated the Fifth Amendment Due Process Clause by indicting Blanks in 2017 for conduct that occurred in 2011. Civ. doc. 1 at 86–88. He argues that the delay between the conduct and the superseding indictment prejudiced him because it prevented him from calling three witnesses. *Id.* The Eighth Circuit has recognized that other courts have held that preindictment delay is not cognizable under section 2255 if the defendant raises it for the first time on collateral review. *See Houser v. United States*, 508 F.2d 509, 515 (8th Cir. 1974) (citing *Chapman v. United States*, 376 F.2d 705, 707 (2d Cir. 1967)).

Here, Blanks did not raise this claim before his trial or on appeal.  This claim therefore is procedurally defaulted.  Accordingly, the Court cannot consider it unless Blanks can establish cause for the default and actual prejudice.  *Anderson*, 25 F.3d at 706; *Reid*, 976 F.2d at 448.

To establish cause and prejudice, Blanks argues that the delay prevented him from calling three witnesses because they are now deceased.  Civ. doc. 1 at 87.  These witnesses supposedly would have testified that they saw Charles Cherry viewing child pornography on the computer and that others had access to the computer.  *Id.*  This evidence, however, is merely duplicative of what was presented during trial.  *See, e.g.*, crim. doc. 236, Trial Tr. at 188:8–188:22.  And Blanks has failed to show any cause for failing to raise this claim before trial or on appeal.

Thus, the Court finds that ground 7 does not warrant section 2255 relief.

## H.    Ground 8

Blanks claims in ground 8 that the prosecution violated the Fifth Amendment Due Process Clause by vindictively prosecuting him and superseding the indictment to add charges.  Civ. doc. 1 at 88–90.  Blanks failed to raise this claim before his trial or on appeal.  Accordingly, the claim is procedurally defaulted and cannot provide section 2255 relief.  Moreover, even if Blanks had preserved this claim, he has failed to meet his "heavy" burden of showing that the prosecution was vindictive, *United States v. Stroud*, 673 F.3d 854, 859 (8th Cir. 2012) (quoting *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004)), because he has failed to produce objective evidence of vindictiveness or submit evidence that raises a presumption of vindictiveness, *id.*  Blanks therefore has not established actual prejudice that excuses his

procedural default.  *Roundtree*, 885 F.3d at 1097.  Thus, the Court finds that ground 8 is procedurally defaulted.

## I.        Ground 9

In ground 9, Blanks asserts that the United States used evidence at trial that it obtained via unlawful searches and seizures by law enforcement, government entities, and private entities acting as government agents.  Civ. doc. 1 at 90.  Blanks originally raised these arguments in pretrial motions, but he withdrew those motions before the magistrate judge could rule on them. *See, e.g.*, crim. doc. 90 (moving to suppress evidence); crim. doc. 128 (withdrawing his motion to suppress).  And he did not raise them on appeal.  Crim. doc. 315 at 5, 8.  Accordingly, they are procedurally defaulted, and the Court cannot consider them unless Blanks demonstrates cause and actual prejudice.  *Anderson*, 25 F.3d at 706; *Reid*, 976 F.2d at 448.

To show good cause, Blanks argues that Whiteley provided him ineffective assistance of counsel by (1) pressuring Blanks to waive his pretrial motions; (2) failing to consider Blanks's mental-health issues; (3) failing to raise Blanks's mental-health issues in court, (4) allowing Blanks's former counsel, Radefeld, to have any legal influence or input on Blanks's decision to waive his rights, (5) failing to explain all possibilities, and (6) failing to explain what rights Blanks was waiving and the impact that waiver would have.  Civ. doc. 1 at 97–98.

Two of these arguments relate to Blanks's mental-health issues.  To support those arguments, he has cited to four websites discussing the effects of anxiety and depression.  Civ. doc. 1 at 99.  Although those websites discuss anxiety and depression generally, they do not provide any specific information about Blanks or demonstrate that Whiteley was ineffective by failing to consider or raise Blanks's mental-health issues.  In fact, the record is void of evidence showing that Blanks has mental-health issues, that Blanks ever told Whiteley that Blanks had

mental-health issues, or that Blanks, when proceeding pro se, made any of the magistrate judges or Judge Webber aware that he had mental-health issues.  Without evidence, Blanks's claim falls far short of satisfying the "heavy burden" Blanks bears to establish ineffective assistance of counsel under section 2255.  *DeRoo*, 223 F.3d at 925 (quoting *Apfel*, 97 F.3d at 1076).

As for the pretrial-motion arguments, the record belies his ineffective assistance of counsel claim.  As Magistrate Judge Nannette A. Baker stated in her order, Blanks "acknowledged on the record his understanding of his right to file pretrial motions; his understanding that the time for filing pretrial motions has passed; and his agreement with the decision of counsel to withdraw the previously filed pretrial motions."  Crim. doc. 129 at 1.  And Blanks knowingly and voluntarily withdrew his pretrial motions.  *See* crim. doc. 129.  Moreover, nothing in the record shows that Whiteley "pressured and coerced" Blanks into waiving his rights, civ. doc. 1 at 96, that Whiteley failed to explain all possibilities, or that Whiteley failed to explain the impact that the wavier would have on Blanks's rights.  The record at most shows that Whiteley counseled Blanks to waive his right to file pretrial motions, advice that falls well within the "an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687–88.

Finally, the Court finds meritless Blanks's claim that Whiteley provided ineffective assistance of counsel by allowing Radefeld to have legal influence or input on Blanks's decision to waive pretrial motions.  Blanks alleges, without support, that Radefeld "advised and encouraged him to waive his rights" when Blanks and Radefeld spoke in the hallway before a hearing on April 18, 2018.  Civ. doc. 1 at 96.  Even if true, the fact that Radefeld had a conversation with Blanks before the hearing does not render Whiteley's assistance ineffective.  Whiteley had no duty to prevent one of Blanks's former attorneys—who was at the hearing allegedly to testify in favor of Blanks—from speaking to Blanks.

22

Thus, the Court finds that ground 8 does not warrant section 2255 relief.

**J.    Ground 12**

In ground 12, Blanks asserts an ineffective-assistance-of-counsel claim, arguing that Whiteley was ineffective when he failed to secure a binding plea agreement for Blanks. Civ. doc. 1 at 103–04.  During a hearing on April 18, 2018, the United States made clear that it had engaged in negotiations with Blanks, but those negotiations regarded a *non-binding* plea agreement.  Crim. doc. 152, Waiver of Motions Hr'g Tr. at 5:25–6:3.  Nothing in the transcript from that hearing, or anything else in the record, evidences that the United States had been willing to enter a binding plea agreement with Blanks.  And Whiteley, like all defense attorneys in similar situations, could not force the United States' hand.  *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) ("[T]here is no constitutional right to plea bargain[] . . . .").  Thus, the Court finds that Blanks failed to show that Whiteley provided ineffective assistance of counsel during plea-agreement negotiations.  Accordingly, the Court finds that ground 12 does not warrant section 2255 relief.

**K.    Ground 13**

Blanks argues in ground 13 that Goldfarb provided ineffective assistance of counsel because Goldfarb (1) was unprepared for trial; (2) had inexperienced and unprepared co-counsel assist him; and (3) did not give an opening statement because he was unprepared and lacked knowledge of the case.  Civ. doc. 1 at 104–09.  The trial record belies Blanks's arguments.  As the trial transcripts show, Goldfarb had knowledge of the facts and law surrounding the case, effectively cross-examined the United States' witnesses, and called and examined two witnesses, including Blanks.  *See* crim. docs. 235–36.  Further, Goldfarb's decisions to not give an opening statement and to have his co-counsel assist him in various trial matters fell within the wide range

of reasonable professional assistance.  *Rice*, 449 F.3d at 897.  Thus, Blanks has failed to show in ground 13 that Goldfarb provided him ineffective assistance of counsel.  Accordingly, the Court finds that ground 13 does not warrant section 2255 relief.

### L.    Ground 16

In ground 16, Blanks claims that his trial counsel, Goldfarb, was ineffective because he failed to object to numerous issues, which allegedly prejudiced Blanks.  Civ. doc. 1 at 111–24. The Court addresses each contention in turn.

#### 1.    Failure to object to jurors with law-enforcement family and friends

Blanks argues that he received ineffective assistance from Goldfarb because Goldfarb did not object to the five chosen jurors who had family and friends that were either actively in law enforcement or retired law enforcement.  *Id.* at 112.  This allegedly prejudiced Blanks because (1) "it is highly probable that their law enforcement family or friends personally know and worked or have worked with the officers that are from the same division, precinct, or department," as the officers who testified as witnesses for the United States and (2) having friends or family in in law enforcement "gives a strong likelihood that [the jurors] would give more weight to the police testimony, as some potential jurors admitted."  *Id.*  Upon review of the record, the Court finds that Blanks has failed to demonstrate that Goldfarb provided him ineffective assistance of counsel.

During voir dire, seventeen venirepersons stated that they had a friend or relative who had some affiliation with law enforcement.  Crim. doc. 235, Trial Tr. at 51:21–52:1–7, 52:20–62:23.  Fourteen of those venirepersons stated their relationships with people in law enforcement *would not* cause them to give more or less weight to the testimony of an officer, and three of them stated that their relationships with people in law enforcement *would* cause them to give more or less weight to the testimony of an officer.  *Id.* at 52:20–62:23.  Judge Webber struck, for

24

cause, the three who admitted that their relationships would affect their perception of an officer's testimony. *Id.* at 115:1–3, 115:10–116:5. He then empaneled a jury, which included four of the other fourteen venirepersons—all of whom stated that their relationships with law enforcement would *not* affect their perception of officer testimony. *Id.* at 127:20–129:2. Goldfarb did not object to those four venirepersons being members of the jury.

Considering the circumstances surrounding the empaneling of the jury, the Court finds that Goldfarb's decision to not object did not fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. Nor did his decision to not use preemptory challenges on those four venirepersons. *See* crim. doc. 235, Trial Tr. at 127:18–19 (failing to strike venirepersons 7, 39, 42, and 43). Moreover, even if Goldfarb's decisions fell below an objective standard of reasonableness, Blanks has failed to demonstrate that those decisions prejudiced him. Each of the four jury members who had relationships with law enforcement testified that their relationships with law enforcement would not affect their perception of officer testimony, i.e., they could be fair and impartial. And nothing in the trial record shows that their relationships influenced their decision during jury deliberations.

Accordingly, the Court finds that Blanks has not shown that Goldfarb provided Blanks with ineffective assistance of counsel in relation to Goldfarb's decisions regarding venirepersons with relationships with law enforcement.

### 2. Failure to object or request removal of jurors with small children and those who worked with children

Blanks also argues that Goldfarb provided ineffective assistance of counsel by failing to object to jury members who either had small children or worked with children. Civ. doc. 1 at 112. He claims that in his "child porn case, it was highly prejudicial for the jur[y] to have multiple jurors that work[ed] with children or ha[d] small children, because it would [have]

25

naturally cause[d] them to consider if their children were victims" and to have "take[n] this fear, frustration, and disgust out on" him, "causing the jury to have [had] a probability of being tainted or bias[ed], even if the bias was unconscious." *Id.* at 112.

During voir dire, venirepersons 7, 32, 42, and 43—all of whom Judge Webber empaneled as members of the jury—stated that they had, at some point, a relationship with children. Venireperson 7 was a high-school teacher and coach. Crim. doc. 234, Trial Tr. at 86:3. Venireperson 32 was a mother of three. *Id.* at 90:9–10. Venireperson 42 was retired but used to go into middle schools and work with kids. *Id.* at 91:18–20. And venireperson 43 worked with kids of all ages. *Id.* at 91:22–23. Although these individuals had relationships with children, none of them testified that they could not be fair and impartial if included on a jury and nothing about their relationships with children made them inherently unfair and partial. Accordingly, the Court finds that Blanks has not shown that Goldfarb provided ineffective assistance of counsel by failing to object to venirepersons 7, 32, 42, and 43 because of their relationships with children.

### 3. Failure to object to black jurors being removed and to preserve *Batson* claim

Blanks argues that Goldfarb should have objected to the prosecution's striking jurors based on race. Civ. doc. 1 at 113. In analyzing a *Batson* challenge, "'[t]he ultimate inquiry' . . . 'is whether the [United States] was motivated in substantial part by discriminatory intent.'" *United States v. Iron Crow*, 970 F.3d 1003, 1007 (8th Cir. 2020) (quoting *Flowers v. Mississippi*, 588 U.S. 284, 303 (2019)). The record, however, is void of evidence that the United States' decision to strike certain jurors "was motivated in substantial party by discriminatory intent." *Id.* (quoting *Flowers*, 588 U.S. at 303). Thus, the Court finds that Blanks has not shown

that Goldfarb provided ineffective assistance of counsel by failing to object to the United States' striking certain jurors based on race.

### 4. Failure to object to introduction of tampered evidence

Blanks believes that someone tampered with the CD and Samsung phone that contained incriminating evidence, and that Goldfarb provided ineffective assistance of counsel by failing to object to Judge Webber's admitting that evidence. Civ. doc. 1 at 113–14. Blanks premises this claim, in part, on misstatements about the record. He claims that Detective Patrick Wilds testified that he pulled CDs out of a bag and that the first CD that he pulled out contained child pornography. *Id.* at 113. Detective Wilds, however, provided credible testimony that he labeled the CD as "#1" because it was the first CD that had child pornography on it, not because it was the first CD that he reviewed. Crim. doc. 236, Trial Tr. at 78:22–79:8. Thus, Blanks has provided no factual support for his claim that someone tampered with the CD. Further, Blanks argues that the Samsung phone did not have a crack at trial, allegedly showing that someone had tampered with the phone. Civ. doc. 1 at 114. But the record plainly undermines that argument:

> Q. (By Mr. Livergood) Now, Detective Slaughter, this is P-91, the phone that you just looked at or just testified about; is that correct?
>
> A. Correct.
>
> Q. And then the broken part, I don't know if that shows -- is that -- the cracked screen, is that what was -- is that the way it was back then?
>
> A. Yes.

Crim. doc. 236, Trial. Tr. at 13:25–14:5. Accordingly, the Court holds that Blanks has not shown that Goldfarb provided ineffective assistance of counsel by failing to object to Judge Webber admitting the evidence.

27

### 5.    Failure to object to Judge Webber's alleged attempt to persuade Blanks to not testify

Blanks also argues that Goldfarb provided ineffective assistance of counsel by failing to object to Judge Webber's alleged attempt to persuade Blanks to not testify. Civ. doc. 1 at 114–15. Before Blanks could testify at trial, Judge Webber questioned Blanks to ensure that he was knowingly and voluntarily deciding to testify at trial:

| | |
|---|---|
| THE COURT: | I'm assuming that sometime Mr. Blanks may or may not testify. And the reason I called a recess was if he does intend to testify, I want to have an interrogation outside the hearing of the jury, and it's going to go as follows: I'm going to say "I'm going to ask you a few questions. You are not to answer my questions until you look at Mr. Goldfarb and he gives you permission to answer my question or to deny it." And I'm simply going to explain to him that if he does testify, he is subject to cross-examination, and that will involve not only all of the evidence that's been presented but it may involve any convictions he has. I don't know what they are. |
| MR. GOLDFARB: | I don't think, before this, I don't think there was anything. |
| THE COURT: | Well, that makes that easier. And I just want to tell him that I am not asking these questions to discourage him to testify, I just want to make sure he is doing it knowingly and voluntarily. |
| MR. GOLDFARB: | I understand. |
| . . . . | |
| THE COURT: | Mr. Blanks, if you would come forward, sir. Good afternoon, Mr. Blanks. |
| THE DEFENDANT: | Good afternoon, Your Honor. |
| THE COURT: | I would like to ask you a few questions. And what I would like to do, the format I would like to use is ask the question but not -- that you don't answer it until you look at Mr. Goldfarb and he shakes his head or |

says you may answer, something like that. Do you understand?

THE DEFENDANT:  Could you repeat your instructions?

THE COURT:  Yes, sir.  I want to ask you some questions.  Not very many, just a few.  I don't want you to answer them, however, until you first look to Mr. Goldfarb for advice.  And if he shakes his head yes, that means you can answer my question.  If he says no, you do not answer the question.  Do you understand?

THE DEFENDANT:  Yes, Your Honor, I do.

THE COURT:  Okay.  Now, in asking these questions, I do not by any means intend to suggest to you that I am trying to influence you as to whether you do or do not testify.  Now look at Mr. Goldfarb.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you testify, you will be sworn under oath in the presence of the jury.  Do you understand that, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The jury is going to be watching you very carefully for how you answer the question, your body language, and -- well, those two things.  How you answer the question and your body language.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand, sir, that if you testify, you will be cross-examined either by Mr. Bateman or by Mr. Livergood about all of the matters that have been raised in this trial up to this time?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And while I have been advised just briefly that there are no convictions, if there are convictions of which no one else is aware, but if they exist and the Government has proof, they would have a right to ask

|                     |                                                                                                                                                                                                                                     |
|---------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                     | you about your prior convictions. Do you understand that?                                                                                                                                                                          |
| THE DEFENDANT:      | When you say "convictions," do you mean felonies? Misdemeanors? Tickets?                                                                                                                                                            |
| THE COURT:          | Yes, felony convictions where the punishment is greater than one year. Now, don't say they exist or they do not, but just that you understand that you would be subjecting yourself to interrogation about those, if they do exist. |
| THE DEFENDANT:      | Yes, Your Honor.                                                                                                                                                                                                                   |
| THE COURT:          | Okay. I think that's all the questions I have.                                                                                                                                                                                     |
| MR. LIVERGOOD:      | Your Honor, the only thing, I think the Court has asked this, but it is his decision. But if he changes his mind, he can still do that.                                                                                             |
| THE COURT:          | Yeah, absolutely. Absolutely. From this moment to when you come forward, you can change your mind and say "I've changed my mind." Do you understand?                                                                                |
| THE DEFENDANT:      | Yes, Your Honor.                                                                                                                                                                                                                   |

Crim. doc. 236, Trial Tr. at 179:15–180:9, 181:24–184:7. Nothing within Judge Webber's colloquy with Blanks was improper, and nothing in it attempted to persuade Blanks to not testify. Indeed, Judge Webber expressly prefaced his questions with: "And I just want to tell him that I am not asking these questions to discourage him to testify, I just want to make sure he is doing it knowingly and voluntarily." *Id.* at 180:5–8. Accordingly, the Court finds that Blanks has not shown that Goldfarb provided ineffective assistance of counsel by failing to object to Judge Webber's alleged attempt to persuade Blanks to not testify.

### 6.    Failure to object to irrelevant evidence or statements

Blanks asserts that Goldfarb failed to object to irrelevant evidence or statements, including that Blanks is a rapper, that he had a model release form for adult females who

appeared in his music videos, and that one of his email accounts had an email with phrases such as "send some pics" and "trade for trade."  Civ. doc. 1 at 116.  Under Federal Rule of Evidence 401, "[e]vidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  The evidence that Goldfarb failed to object to meets this standard.  Accordingly, the Court finds that Blanks has not shown that Goldfarb provided ineffective assistance of counsel by failing to object to the evidence based on relevancy grounds.

### 7.    Failure to object to Judge Webber's allegedly interrupting Blanks's testimony with a hostile tone

Allegedly, Goldfarb also provided ineffective assistance of counsel by failing to object to Judge Webber's allegedly interrupting Blanks's testimony and Judge Webber's tone of voice.  *Id.* at 116–17.  During Blanks's testimony, Judge Webber did interrupt Blanks.  But he did so to instruct Blanks to wait until counsel had asked a question:

Q.  No protection involved?

A.  Like I said --

THE COURT:  Wait until the question is asked before you answer.

THE WITNESS:  I'm sorry, Your Honor.

Crim. doc. 236, Trial Tr. at 220:14–18.  Even if Judge Webber used a "hostile tone" when doing so, civ. doc. 1 at 117—which the record does not support—Goldfarb's decision to not object on that was within the range of reasonable professional assistance.  "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," *Liteky v. United States*, 510 U.S. 540, 555 (1994), and counsel's assistance is not ineffective for failing to raise a meritless argument, *Thomas v. United States*, 951 F.2d 902, 905 (8th Cir. 1991) (per curiam).  Moreover,

Blanks has not shown that Goldfarb's decision to not object during an isolated incident caused him any prejudice, let alone that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 689). Accordingly, the Court finds that Blanks has not shown that Goldfarb provided ineffective assistance of counsel by failing to object to Judge Webber's allegedly interrupting Blanks's testimony with a hostile tone.

### 8. Failure to object to hearsay and lack of due process

In this claim, Blanks asserts that Judge Webber requested that Blanks plead guilty instead of proceeding to trial and that Goldfarb failed to object to that request. Civ. doc. 1 at 117–19. Blanks, in making this argument, misrepresents the record: Judge Webber did not request that Blanks plead guilty, but rather inquired about the status of a plea agreement and whether Blanks intended to proceed to trial:

| | |
|---|---|
| THE COURT: | All right.  Thank you for coming in.  Plaintiff, where are we now with proceeding with the guilty plea? |
| MR. LIVERGOOD: | Defendant still desires to go to trial. |
| MR. GOLDFARB: | He does, Your Honor. |

Crim. doc. 235, Trial Tr. at 39:11–17. At no point did Judge Webber "request" that Blanks plead guilty. Accordingly, the Court finds that Blanks has not shown that Goldfarb provided ineffective assistance of counsel when he failed to object to Judge Webber's alleged request for Blanks to plead guilty.

### 9. Failure to object to the exclusion of an alternate-perpetrator defense

Blanks argues that Goldfarb failed to present an alternate-perpetrator defense because Goldfarb failed to object to its exclusion. Civ. doc. 1 at 120–21. The record contradicts Blanks's argument. Before trial, the United States sought to preclude Blanks from presenting an

32

alternate-perpetrator defense because he could not demonstrate a direct link between the suspect (Charles Cherry) and the crime.  Crim. doc. 131 at 1.  At trial, the parties and Judge Webber discussed the motion, crim. doc. 236, Trial Tr. at 191:11–193:15, and Judge Webber allowed Goldfarb to question witnesses about Charles Cherry, effectively denying the United States' motion to preclude any alternate-perpetrator defense.  For example, Blanks himself testified that he saw Charles Cherry doing inappropriate things on the computer:

Q.  And did you ever see Charles on the computer at your grandmother's house?

A.  Yes.

Q.  How often?

A.  Very often.

Q.  Did you ever see what he was doing on the computer?

A.  Yeah.  One time.

MR. LIVERGOOD:  I object.  Can we narrow it down to time periods?

THE COURT:  Yes.  Sustained.

Q.  (By Mr. Goldfarb)  Do you know when you saw Charles on that computer doing anything inappropriate?

A.  Late spring, early summer.

Q.  Of what year?

A.  2011.

Q.  So could you give me a month range, approximate?

A.  Yeah.  I mean, I'm under oath, so I don't want to say an exact month.  I'm not -- early summer.  June.

Q.  So June?

A.  Late May.

Q. Sometime in there you saw him.  And at that time, how many times did you see him do anything inappropriate with that computer?

A. That time was the first time I had actually seen him do something inappropriate, but I have found things on the computer, deleted them.  You know, it was no good.

*Id.* at 204:5–205:5.  Based on the record, the Court finds that Goldfarb's conduct was well within the range of reasonable professional conduct and that, even if he erred, Blanks suffered no prejudice from it because the jury was free to disbelieve Blanks, and apparently did so.  Accordingly, the Court finds that Blanks has not shown that Goldfarb provided ineffective assistance of counsel by failing to object to the alleged exclusion of an alternate-perpetrator defense.

### 10.    Failure to object to evidence and to move for suppression of the evidence

Blanks next claims that Goldfarb provided ineffective assistance of counsel because he failed to object to or move for suppression of evidence, at trial, relating to statements he made to Detective Slaughter.  Civ. doc. 1 at 121–22.  Blanks, however, has not pointed to any legal basis on which that evidence was inadmissible, *see id.*, and upon review of the relevant constitutional provisions and evidentiary rules, the Court finds none.  Accordingly, the Court finds that Blanks has not shown that Goldfarb provided ineffective assistance of counsel by failing to object to evidence and to move for suppression of that evidence.

### 11.    Failure to properly impeach Donya Jackson

Blanks also premises his ineffective-assistance-of-counsel claim on Goldfarb's cross examination of Donya Jackson, arguing that he failed to properly impeach her.  Civ. doc. 1 at 122–23.  Upon review of the trial transcript, the Court finds that Goldfarb effectively cross examined and impeached Jackson.  For example, Goldfarb challenged Jackson on her trial testimony that was inconsistent with her grand-jury testimony:

34

Q. So is it a fair statement to say someone who just walked up on that computer and all of those CDs wouldn't know that particular CD from any of the other ones?

A. That's fair to say.

Q. Would you agree with the statement that more often than not people who possess child pornography are also making it?

A. No, I would not say more often than not.

Q. So it would be an incorrect statement to say:  When we get in the home and the person is actually making them, more often than not we do find that that's the case.  You have not testified to that previously?

A. Can you repeat that?

Q. Sure.

MR. LIVERGOOD:    Your Honor, I'm going to object.    This is improper impeachment.  If he is referring to something she has testified to, she should have an opportunity to look at it before she responds.

. . . .

Q. So now would it be a fair statement to say you've testified previously that more often than not you do find that people who have it are producing it?

A. Well, I'm talking about peer-to-peer investigations specifically in that paragraph.  And I was explaining to the grand jury that, yes, when we find peer-to-peer investigations and we go investigate that type of case, our purpose is to find the hands-on offenders.

Q. Your statement, though, was more times than not we do find that's the case, that they are producing it in addition to possessing?

A. That is my statement there, yes.

Q. And that was under oath to the grand jury?

A. Absolutely.

Crim. doc. 236, Trial Tr. at 174:18–176:10.  Goldfarb's cross examination fell well within the

"wide range of reasonable professional assistance."  *Rice*, 449 F.3d at 897 (quoting *Strickland*,

466 U.S. at 689).  Thus, the Court finds that Blanks has not shown that Goldfarb provided

ineffective assistance of counsel by failing to impeach Jackson.

> **12.     Failure to object to the United States displaying child pornography during Blanks's testimony**

Lastly, Blanks argues that Goldfarb failed to object to the United States publishing

images of child pornography to the jury during Blanks's testimony.  Civ. doc. 1 at 123–24.  The

record demonstrates that Blanks's argument lacks merit.  Before trial, Goldfarb moved to

preclude the United States from showing the jury, or in any way publishing, any pictures of child

pornography.  Crim. doc. 215.  But Judge Webber denied Blanks's motion, crim. doc. 217,

which the Eighth Circuit did not take issue with when reviewing Blanks's conviction and,

specifically, the admission of child-pornography images, crim. doc. 315 at 8–10.  The Eighth

Circuit concluded that the child-pornography images were relevant and were not "unfairly

prejudicial and needlessly cumulative."  *Id.*  Thus, if Goldfarb would have objected to the images

being shown to the jury during any point of the trial, that objection would have lacked merit.

"Counsel's failure to raise [a] meritless issue[] does not constitute ineffective assistance."

*Thomas*, 951 F.2d at 905.  According, the Court finds that Blanks has not shown that Goldfarb

provided ineffective assistance of counsel by failing to object to the United States displaying

pornography during Blanks's testimony.

For these reasons, the Court holds that ground 16 does not warrant section 2255 relief.

> **M.     Ground 18**

In ground 18, Blanks asserts that Judge Webber demonstrated bias against him.  Civ.

doc. 1 at 127–52; civ. doc. 78 at 36–37.  His arguments rehash the ones he made in his motions

to disqualify and recuse Judge Webber, *see* crim. docs. 363, 365, 368, which the Eighth Circuit

reviewed and rejected, crim. doc. 391 at 2 (stating that the Eighth Circuit "has reviewed the

original file of the United States District Court" and summarily affirms the district court's order "denying the motions to recuse and disqualify"). "It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003) (quoting *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981)). Thus, under well-settled precedent, Blanks cannot relitigate his judicial-bias claim through his section 2255 motion. *Id.* Accordingly, the Court finds that ground 18 does not warrant section 2255 relief.

### N.    Ground 19

In ground 19, Blanks argues that he received ineffective assistance of counsel from both Whiteley and Sternberg because they did not appeal based on judicial bias. Civ. doc. 1 at 152.

Blanks has failed to demonstrate that Sternberg's performance on direct appeal fell below an objective standard of reasonableness. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). On appeal, Sternberg raised two arguments: (1) the district court abused its discretion in denying Blanks leave to refile pretrial motions and (2) the district court abused its discretion when it admitted certain evidence at trial. Crim. doc. 315 at 5, 8. Blanks has not pointed to anything suggesting that Sternberg's decision not to raise the judicial-bias claim was unreasonable.

Moreover, Blanks has failed to demonstrate that Sternberg's failure to raise the judicial-bias claim on appeal prejudiced Blanks. Sternberg did what all appellate counsel must do: sort through arguments that an appellant can raise on appeal and determine which claims are most likely to result in success on appeal. Blanks's judicial-bias claim was unlikely to succeed on appeal, which the Eighth Circuit's affirmance of Judge Webber's order "denying the motions to recuse and disqualify" demonstrates. Crim. doc. 391 at 2.

37

Accordingly, "[a]bsent contrary evidence, [the Court] conclude[s] that appellate counsel was exercising sound appellate strategy in the 'process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail." *Sidebottom v. Delo*, 46 F.3d 744, 759 (8th Cir. 1995) (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)). "[F]ar from being evidence of incompetence, [this] is the hallmark of effective appellate advocacy." *Smith*, 477 U.S. at 536 (citing *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)).

Further, Whiteley did not represent Blanks on direct appeal or on an interlocutory appeal. Instead, he withdrew as counsel a few months before Blanks's trial. Crim. docs. 158, 217. Blanks has not asserted that Whiteley should have taken an interlocutory appeal and, even if he had, such an appeal was unlikely to succeed for the same reason that a direct appeal on the issue was unlikely to succeed. Blanks's claim that Whiteley failed to appeal the judicial-bias issue therefore cannot serve as a ground for section 2255 relief.

Thus, the Court finds that ground 19 does not warrant section 2255 relief.

### O.    Ground 20

In ground 20, Blanks claims that (1) the prosecution violated the Fifth Amendment Due Process Clause by tampering with a witness, Ambrosia Cherry; and (2) his trial counsel was ineffective because counsel allowed the prosecution to tamper with the witness. Civ. doc. 1 at 153–58; civ. doc. 78 at 38. In support, he argues that an FBI agent turned Ambrosia Cherry against Blanks by presenting to her the prosecution's side of the story. Civ. doc. 1 at 153–54. Further, Blanks claims that his trial counsel was ineffective because counsel did not object to a "charge of obstruction of justice base[d] solely on hearsay by an irritated witness not under oath, nor cross-examined." Civ. doc. 1 at 158.

Although Blanks is correct that "conduct [by the prosecution] designed to intimidate potential defense witnesses is improper," *United States v. Habhab*, 132 F.3d 410, 415 (8th Cir. 1997) (citation omitted), he has incorrectly claimed that the record demonstrates that the United States committed witness intimidation.  The criminal-trial record includes the FBI agent's trial testimony, during which the agent testified regarding his conversation with Ambrosia Cherry.  Crim. doc. 235, Trial Tr. at 31:3–39:6.  Nothing in the record suggests that the prosecution improperly intimidated Ambrosia Cherry.  Thus, Blanks has not shown that his trial counsel provided ineffective assistance of counsel.

Further, because Blanks did not raise this constitutional claim on appeal, *see* crim. doc. 315 at 4, the Court considers it procedurally defaulted unless Blanks shows cause for the default and actual prejudice, *see Anderson*, 25 F.3d at 706; *Reid*, 976 F.2d at 448.  Blanks has made no attempt to show cause for his default and has failed to show actual prejudice.  Accordingly, the Court finds that his ground 20 constitutional claim is procedurally defaulted and that his ground 20 ineffective-assistance-of-counsel claim does not warrant section 2255 relief.

### P.    Ground 21

In ground 21, Blanks alleges that the St. Louis County Police Department entrapped him by "encourag[ing] and induc[ing] [Blanks] to get back into the prostitution business, to help them catch a pedophile pimp . . . , pedophile 'Johns', [sic] and to gather information from prostitutes, strippers, and ex-prostitutes, that use[d] to work for JC."  Civ. doc. 1 at 159.  The Court finds that this claim is procedurally defaulted:  Blanks did not raise this claim on direct appeal.  Accordingly, the Court finds that ground 21 does not warrant section 2255 relief.

### Q.    Ground 22

Blanks's 22nd ground for relief argues that Judge Webber "constructively amended" the charges against Blanks when Judge Webber read the jury instructions.  Civ. doc. 1 at 159–61. "A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner—often through the evidence presented at trial or the jury instructions—that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment."  *United States v. Johnson*, 719 F.3d 660, 668 (quoting *United States v. Whirlwind Soldier*, 499 F.3d 862, 870 (8th Cir. 2007)).  Blanks did not raise his constructive-amendment claim at trial, civ. docs. 235–37, or on direct appeal, crim. doc. 315 at 5, 8.  Accordingly, the Court finds that ground 11 is procedurally defaulted.  *See Swedzinski v. United States*, 160 F.3d 498, 500–01 (8th Cir. 1998) (holding that the petitioner procedurally defaulted a jury-instruction issue by failing to raise it at trial or on direct appeal).

### R.    Ground 23

Finally, Blanks asserts in ground 23 that his sentence violates the Double Jeopardy Clause because the conviction for receiving child pornography and the conviction for possessing child pornography are duplicative.  Civ. doc. 1 at 162.  To establish a violation of the Double Jeopardy Clause, a defendant "must show that he was convicted of two offenses that are 'in law and fact the same offense.'"  *United States v. Muhlenbruch*, 634 F.3d 987, 1002 (8th Cir. 2011) (quoting *United States v. Roy*, 408 F.3d 484, 491 (8th Cir. 2005)).  Further, "[a]n indictment, not questioned at trial or on direct appeal, is not open to attack by motion under § 2255, unless it is so obviously defective as not to be capable by any reasonable construction of being said to charge the offense on which conviction was had."  *Link v. United States*, 352 F.2d 207, 709 (8th Cir. 1965) (citations omitted).

Here, Blanks did not raise his duplicative argument at trial or on direct appeal.  Crim.

doc. 315 at 5, 8.  And the record forecloses any argument regarding cause and prejudice or that

Blanks's indictment was "so obviously defective."  *Link*, 352 F.2d at 709 (citations omitted).

Blanks's offenses involved different facts:  each related to a different item on which the child

pornography was received or stored.  Count I related to receipt of child pornography using the

internet.  Crim. doc. 71 at 1–4.  Count II related to child pornography stored on a Philips CD-R.

*Id.* at 4–5.  And Count III related to child pornography stored on a Samsung cell phone.  *Id.* at 5–

6.  Further, to the extent that Blanks asserts cause based on Goldfarb's failure to raise this issue,

civ. doc. 78 at 40–41, the Court finds that argument meritless.  Goldfarb's decision not to raise

this issue fell "within the wide range of reasonable professional assistance."  *Rice*, 449 F.3d at

897 (quoting *Strickland*, 466 U.S. at 689).  Thus, the Court holds that ground 23 is procedurally

defaulted.

## IV.    Certificate of appealability

For the Court to issue a certificate of appealability, Blanks must make a substantial

showing that he suffered the denial of a constitutional right.  *See Cox v. Norris*, 133 F.3d 565,

569 (8th Cir. 1997).  A substantial showing means one indicating that reasonable jurists could

debate the issues, a court could resolve the issues differently, or the issues deserve further

proceedings.  *Id.*  But as shown in the discussion above, Blanks has not made such a showing.

Accordingly, the Court declines to issue a certificate of appealability in this case.

## V.    Conclusion

The Court grants Blanks's [80] Motion to Supplement his reply.  But the Court finds that

the record conclusively establishes that Blanks is not entitled to relief under section 2255.

Accordingly, the Court denies Blanks's [1] Motion to Vacate, Set Aside or Correct Sentence

41

Under 28 U.S.C. § 2255, [77] Request to Subpoena Records in Support of 2255 Relief, and

[79] Motion for Evidentiary Hearing and Appointment of Counsel.  The Court also denies as

moot Blanks's [83] Motion for Bond Pending Appeal Pursuant Title 18 USC Section 3143(b)

with Expedited Ruling Due to Medical and Family Emergencies.  Because Blanks did not obtain

leave to file an amended motion, the Court strikes Blanks's [82] Amended Motion for

Evidentiary Hearing and Appointment of Counsel.  Finally, the Court declines to issue a

certificate of appealability.  A separate order of dismissal accompanies this memorandum and

order.

 So ordered this 21st day of July 2025.

         _____

         STEPHEN R. CLARK
         CHIEF UNITED STATES DISTRICT JUDGE